UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOLBROOK MFG LLC, an Illinois limited liability company; EFG HOLDINGS, INC., a Delaware corporation; ELGIN FASTENER GROUP LLC, a Delaware limited liability company, | Case No. 20-cv-05940 |
| Plaintiffs, | Honorable Franklin U. Valderrama |
| v. | |
| RHYNO MANUFACTURING INC., an Illinois corporation; DEREK KUHNS, an individual; and SHAWN KUHNS, an individual. | |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

Holbrook Mfg LLC ("Holbrook No. 2"), EFG Holdings, Inc. ("EFG Holdings"), and Elgin Fastener Group LLC ("EFG," collectively, "Plaintiffs") filed suit against Rhyno Manufacturing Inc. ("Rhyno"), Derek Kuhns, and Shawn Kuhns (collectively, "Defendants"), asserting several causes of action stemming from Defendants' alleged use of an unregistered trademark and deceptive practices relating to a now-inactive website and Defendants' alleged breaches and tortious conduct relating to the "raid" on Plaintiffs' employees, customers, suppliers, and manufacturing representatives. Plaintiffs now move the Court to enter a preliminary injunction against Defendants as to five counts pursuant to Fed. R. Civ. P. 65(a). For the reasons stated below, the Court grants in part and denies in part Plaintiffs' motion for a preliminary injunction.

**Background**

EFG Holdings and EFG are providers of engineered fastening solutions serving wholesalers, distributors, and original equipment manufacturers. ECF No. 12, Exh. A, Kochan Decl. ¶ 3. Before January 2016, Holbrook Mfg., Inc. ("Holbrook No. 1") was a specialty manufacturer and distributor of fasteners, including custom engineered and specialty products for commercial and industrial applications. *Id.* ¶ 4. Holbrook No. 1 was owned by Donald Kuhns, the father of employee-defendants, Shawn Kuhns and Derek Kuhns, and another shareholder. *Id.* Shawn and Derek Kuhns both worked at Holbrook No. 1; Shawn was as an Engineering Manager, and Derek held an inside sales position. *Id.*

On January 4, 2016, EFG Holdings acquired Holbrook No. 1 pursuant to an Equity Purchase Agreement. Kochan Decl. ¶ 4 As part of the acquisition, Holbrook No. 1 was merged into Plaintiff Holbrook No. 2. *Id.* ¶ 5. Holbrook No. 2 is an indirect wholly owned subsidiary of EFG, which is in turn, a wholly owned subsidiary of EFG Holdings. *Id.* ¶ 2.

Following the acquisition, Holbrook No. 2 continued to employ many of the Holbrook No. 1 former employees, including Defendants Shawn and Derek Kuhns, who remained in the same positions, Engineering Manager and inside sales, respectively. Kochan Decl. ¶ 8. Holbrook No. 2 required all employees, including Shawn and Derek, to review and acknowledge the policies and guidance provided in the Elgin Fastener Group Employee Handbook (the "Employee Handbook"). Among other provisions, the Employee Handbook contains a "Conflict of Interest" provision, a "Confidential Nature of Work" provision, a provision that expressly disclaims the creation of a contract, and a provision that allows the company to reserve the right to amend the contents of the Handbook. Compl. Exhs. C, D; ECF No. 14, Resp. to Prelim. Inj. Mot. at 10; ECF No. 14, Resp. to Prelim. Inj. Mot., Exh. A, Portions EFG Handbook at 4. Shawn Kuhns acknowledged that he

read the Employee Handbook on January 14, 2020, Compl. Exh. C, and Derek Kuhns acknowledged that he read the Employee Handbook on January 8, 2020, Compl. Exh. D.

On April 8, 2020, Derek Kuhns was terminated from his sales position at Holbrook No. 2. Kochan Decl. ¶ 15. On May 13, 2020, Defendant Rhyno, also a provider of engineered fastening solutions, was incorporated. *Id.* Upon information and belief, Joe Kochan states that Derek Kuhns was involved in the formation of Rhyno. *Id.* On August 5, 2020, Rhyno registered a YRL and domain name for https://www.rhynomfginc.com. Compl. ¶ 35. And, on August 10, 2020, Shawn Kuhns resigned, without notice, from his position as Holbrook's Engineering Manager. Kochan Decl. ¶ 17. Shawn Kuhns went to work for Rhyno. Resp. to Prelim. Inj. Mot., Exh. D, S. Kuhns Decl. ¶¶ 4–5.

Throughout August and September 2020, Rhyno hired away five Holbrook No. 2 employees, including Shawn Kuhns and Jesse Arambula, a key highly skilled toolmaker essential to Holbrook's business. Kochan Decl. ¶ 39.

On or about August 20, 2020, Rhyno's original website went online and was available to the public. Kochan Decl. ¶ 19. Rhyno's original website falsely stated that Rhyno was a licensed supplier of numerous branded fastener lines, including but not limited to TORX® and TORX PLUS®. *Id.* ¶ 20. On or about August 24, 2020, Rhyno took down its original website after the owner of the TORX® and TORX PLUS® marks complained that Rhyno was falsely representing it was a TORX® and TORX PLUS® licensee. *Id.* ¶ 22.

On or about September 23, 2020, Defendants launched a new Rhyno website. Kochan Decl. ¶ 23. Rhyno's amended website had embedded the TORX® trademark into its URL and code. *Id.* ¶ 24. Rhyno is not a licensed TORX® and TORX PLUS® supplier and does not and cannot sell TORX® and TORX PLUS® fasteners. *Id.* ¶ 25. Similarly, Rhyno's amended website incorporated

the unregistered Holbrook™ mark into its website code. *Id.* ¶ 30. Rhyno's website also copied and used large amounts of content from Holbrook's website, as well as large amounts of TORX® content from the brand owner's website. *Id.* ¶¶ 26, 31, 32. And, the amended website contained false statements that one of Defendants' systems is federally registered and contains a patented feature that Rhyno does not own patent rights in. *Id.* ¶ 28. The amended website was taken down on October 6, 2020 and Defendants are rebuilding the website from scratch using a professional. ECF No. 19, Am. Resp. to Prelim. Inj. Mot. at 2, Exh. A, D. Kuhns Suppl. Decl. ¶ 17.

On October 6, 2020, Plaintiffs filed suit against Rhyno, Derek Kuhns, and Shawn Kuhns. The Complaint asserts eight counts stemming from Defendants' allegedly deceptive practices relating to Rhyno's now-inactive website and Defendants' alleged breaches and tortious conduct relating to the "raid" on Plaintiffs' employees, customers, suppliers, and manufacturing representatives. Count I alleges that Defendants violated section 43(a) of the Lanham Act through their use of the unregistered Holbrook trademark and the TORX® and TORX PLUS® marks on Rhyno's website and in its metadata, as well as their use of the "®" symbol with an unregistered term. Count II alleges that Rhyno's website contained statements constituting false patent marking in violation of 35 U.S.C. § 292. Count III alleges that Defendants have violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 5/102. Count IV asserts a breach of contract action against Derek and Shawn Kuhns for allegedly breaching the confidentiality provision of the Employee Handbook. Count V alleges Tortious Interference with Contract, against all Defendants. Count VI alleges Tortious Interference with Contract against Rhyno. Count VII alleges Tortious Interference with Prospective Economic Advantage against all Defendants. And, Count VIII alleges Unfair Competition against all Defendants.

On October 14, 2020, Plaintiffs filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. ECF No. 10, Prelim. Inj. Mot. Plaintiffs maintain that they are entitled to injunctive relief because they: (1) have some likelihood of success on the merits; (2) lack an adequate remedy at law; and (3) will suffer irreparable harm if injunctive relief is denied. *Id.*; ECF No. 12, Mem. in Support of Prelim. Inj. Mot. Plaintiffs seek injunctive relief via Counts I through III, VII, and VIII.

Defendants counter that the Court should deny Plaintiffs' Motion because Plaintiffs fail to satisfy the elements for issuance of injunctive relief. Resp. to Prelim. Inj. Both parties submitted declarations and other evidence in support of their respective Motion and Response. After the filing of Defendants' Response, Plaintiffs filed a supplemental declaration in support of the Motion for a preliminary injunction. ECF No. 15, Kochan Suppl. Decl.

The Court held a hearing on Plaintiffs' Motion on October 19, 2020. Based on the parties' arguments, and with the parties' agreement, the Court construed the Plaintiffs' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction as a Motion for a Preliminary Injunction. ECF No. 18; *see Carlson Group, Inc. v. Davenport, et al.*, 2016 WL 7212522, at *2 (N.D. Ill. Dec. 13, 2016) (construing the plaintiff's motion for a temporary restraining order and preliminary injunction as a motion for a preliminary injunction after both parties had filed briefs in support and opposition, submitted declarations and supplemental declarations, and appeared for oral argument). The Court granted Defendants leave to file an amended response opposing the Motion for a Preliminary Injunction and granted Plaintiffs leave to file a reply in support. Both parties filed the aforementioned briefs. ECF No. 19, Am. Resp. to Prelim. Inj. Mot.; ECF No. 20, Reply.

**Legal Standard**

A party seeking a preliminary injunction is required to demonstrate (i) a likelihood of success on the merits, (ii) that it has no adequate remedy at law, and (iii) that it will suffer irreparable harm if the relief is not granted. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002), *as amended* (Oct. 18, 2002). The Seventh Circuit recently clarified *how likely* success on the merits must be in order to satisfy the standard. *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). The Court explained that a "possibility of success is not enough" and "[n]either is a better than negligible chance." *Id.* (internal citations and quotations omitted). But, the moving party "need not show that it definitely will win the case." *Id*. at 763. "A strong showing" of a likelihood of success on the merits thus "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. (internal citations and quotations omitted).

If the moving party meets this three-element threshold showing, the court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (quoting *Planned Parenthood*, *of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018)). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Labs. v Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992)). The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win[,] the more that

balance would need to weigh in its favor." *GEFT Outdoors*, 992 F.3d at 364 (citing *Planned Parenthood*, 896 F.3d at 816). Finally, the court must consider the interests of non-parties in granting or denying the requested relief. *Ty, Inc., v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). It is within this framework that the Court analyzes Plaintiffs' Motion for Preliminary Injunction.

## Discussion

### I. Lanham Act and Illinois Uniform Deceptive Trade Practices Act

Plaintiffs premise much of their requested injunctive relief on Counts I and III of their Complaint, which respectively assert causes of action for violations of the Lanham Act and Illinois Uniform Deceptive Trade Practices Act ("UDTPA").[1] Plaintiffs claim that Defendants have used false and misleading statements on Defendants' website to "cause confusion in the marketplace, misrepresent Rhyno's business and capabilities, and wrongfully divert customers away from Plaintiffs' website[] to Rhyno[']s." Prelim. Inj. Mot. ¶ 17.

---

[1]Based on Defendants' allegedly wrongful conduct related to Rhyno's website, Plaintiffs request that the Court:

> [(1)] Enjoin[ Defendants] from making any further false or misleading statements on Rhyno's website or otherwise stating or implying that Rhyno is a licensed supplier of any branded products for which Rhyno is not actually licensed, including without limitation such claims with respect to TORX® and TORX-PLUS® branded products; [(2)] Enjoin[ Defendants] from using in any manner, on or in Rhyno's website, source code for its website, or meta data or metatags or otherwise, the unregistered Holbrook™ name or mark, the TORX® and TORX-PLUS® names or marks, or any confusingly similar names, words, or marks; [(3)] Enjoin[ Defendants] from falsely claiming that "6-LOBE Plus" is a federally registered trademark or using the "®" symbol with the unregistered 6-LOBE PLUS name; [(4)] Direct[] Defendants to take appropriate remedial action, including by posting notices on any Rhyno website correcting Defendants' false, deceptive, and misleading statements and actions, and contacting appropriate web browsers to request that they remove offending links previously established by Defendants; [and (5)] Enjoin[ Defendants] from engaging in any further acts of unfair competition, misrepresentation, or deception through Rhyno's website or otherwise or otherwise competing with Plaintiffs through unfair, deceptive, or other wrongful means[.]"

Prelim. Inj. Mot. at 7–8.

### A.    Standing

As a threshold matter, the Court must ensure it possesses subject matter jurisdiction over Plaintiffs' claims. Two subsets of Plaintiffs' Lanham Act claims raise questions about Plaintiffs' standing: (1) claims based on Defendants' alleged infringement of marks owned by third parties, and (2) claims based on Defendants' use of the "®" symbol with an unregistered term.

To have standing, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). Under 15 U.S.C. § 1125(a), "any person who believes that he or she is likely to be damaged" by a prohibited act can bring suit. The Supreme Court has clarified that "that to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l*, 572 U.S. at 131–32. Further, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising … ." *Id.* at 133.

The Court starts with Plaintiffs' claim relating to Defendants' misuse of third-party marks of which Plaintiffs are licensed suppliers. Although a "plaintiff need not be the owner of a registered trademark in order to have standing to sue," courts have interpreted § 1125(a) "to limit standing to persons who show proof of ownership of a proprietary right or a reasonable interest to protect." *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 867 (N.D. Ill. 2009) (internal citations and quotations omitted). Because Plaintiffs have shown—and Defendants do not dispute—that Plaintiffs are licensed suppliers of TORX® and TORX PLUS® branded fasteners and are likely to lose business and goodwill based on Defendants' misuse of the marks, Plaintiffs have

sufficiently established that they have standing to allege a Lanham Act claim against Defendants based on Defendants' use of these marks. *See Gruen Mktg. Corp. v. Benrus Watch Co.*, 955 F. Supp. 979, 984 (N.D. Ill. 1997) ("Because [Plaintiff] possesses a license to use the [third-party's] mark, [Plaintiff] has standing under Section 43(a) to bring an action against … defendants.").

Not so with Plaintiffs' Section 1125(a) claim based on Defendants' use of the "®" symbol in conjunction with an unregistered term. Plaintiffs' sole basis for their unregistered mark claim is "Rhyno's use on its website of the federal trademark symbol ® with its 6-LOBE PLUS product name," which Plaintiffs allege is "false and misleading in that 6-LOB PLUS is not a federally registered trademark." Compl. ¶ 100. But Plaintiffs fail to show how this false claim injures Plaintiffs' reputation or sales. Plaintiffs have produced no evidence that they sell or are otherwise associated with the 6-LOBE PLUS system, or that consumers would confuse "6-LOBE PLUS" for a Holbrook No. 2 product. Nor do they demonstrate that the false claim regarding the "6-LOBE PLUS" registration would impact Plaintiffs' reputation or sales. *See TWD, LLC v. Grunt Style LLC*, 2019 WL 5420153, at *5 (N.D. Ill. Oct. 23, 2019) (holding that plaintiff lacked standing on unregistered mark claim where the complaint was devoid of allegations regarding how the improper use of the symbol would cause consumer confusion or affect plaintiff's reputation or sales). As such, Plaintiffs fail to establish a factual basis for standing on the unregistered mark claim. The Court having considered the threshold standing issue, now turns to Plaintiff's Motion for a Preliminary Injunction.

### B.     Likelihood of Success on the Merits

The Court begins its analysis with whether Plaintiffs have established the likelihood of success on Counts I and III (for the claims over which it has subject matter jurisdiction). Although the parties give short shrift to the likelihood of success on the merits of Plaintiffs' Lanham Act and

UDTPA claims, a plaintiff must meet *each* threshold requirement to warrant issuance of a preliminary injunction. *see GEFT Outdoors, LLC*, 922 F.3 at 364.

Defendants make limited arguments about Plaintiffs' likelihood to succeed on the merits of Counts I and III, but instead focus on Plaintiffs' failure to establish irreparable harm because Defendants' website was taken down on October 6, 2020. Am. Resp. to Prelim. Inj. Mot. at 2–4; D. Kuhns Suppl. Decl. ¶ 17; Compl. The Court disagrees, and holds that Plaintiffs have sufficiently established the likelihood of success on the merits and risk of irreparable harm, and the balance of harms favors the grant of a preliminary injunction related to Defendants' violations of the Lanham Act and UDTPA.

### 1.      Lanham Act, 15 U.S.C. § 1125(a)

To state a claim for false designation of origin, false advertising, or unfair competition under Section 43(a) of the Lanham Act, a plaintiff must allege that (1) the mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers. *Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016). Plaintiffs demonstrate that Defendants infringed not only Holbrook's unregistered trademark, but also the trademarks of various brands of fasteners sold by Holbrook, including but not limited to TORX® and TORX PLUS®. Kochan Decl. ¶¶ 24–25, 30.

Plaintiffs have established that each misappropriated third-party mark embedded in Rhyno's website in violation of § 1125(a) is a registered mark. Kochan Decl. ¶¶ 20, 24–25. Registration of a trademark creates a rebuttable presumption that the mark is valid. *Georgia-Pacific Consumer Products LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011). Defendants have not submitted any evidence or argument to rebut this presumption, so Plaintiffs have sufficiently established that the third-party marks, including but not limited to TORX® and

TORX PLUS®, are protectable. *See, e.g.*, *Entm't One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 949 (N.D. Ill. 2019) (holding where defendants do not contest the registration of trademarks, no genuine issue exists regarding the fact that the trademarks are protectable).

Conversely, the parties agree that the Holbrook™ trademark is unregistered. Kochan Decl. ¶ 30; Am. Resp. to Prelim. Inj. Mot. at 1. When a mark is unregistered—as is the case here—the plaintiff has the burden to establish its entitlement to protection under the Lanham Act based on the "distinctiveness" of the mark. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998). "The first step in determining whether an unregistered mark or name is entitled to the protection of the trademark laws is to categorize the name according to the nature of the term itself." *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1085 (7th Cir. 1988). Marks are classified in categories of increasing distinctiveness—they may be (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *see also Packman v. Chi. Tribune Co.*, 267 F.3d 628, 641 (7th Cir. 2001). "Trademarks that are fanciful, arbitrary [i.e. made-up terms like 'Kodak'] or suggestive are fully protected, while 'descriptive words (e.g. "bubbly" champagne) may be trademarked only if they have acquired *secondary meaning,* that is, only if most consumers have come to think of the word not as descriptive at all but as the name of the product.'" *Int'l Kennel Club of Chicago*, 846 F.2d at 1085 (quoting *Blau Plumbing, Inc. v. SOS Fix–It, Inc.,* 781 F.2d 604, 609 (7th Cir. 1986)). "Secondary meaning is acquired when in the minds of the public, the primary significance of a product feature … is to identify the source of the product rather than the product itself." *Thomas & Betts Corp. v. Panduit Corp.,* 138 F.3d 277, 291 (7th Cir. 1998) (internal citations and quotations omitted). Although Plaintiffs do not identify which category the unregistered Holbrook™ trademark falls into, a fair reading of the evidence presented suggests

11

that it is an arbitrary mark, like "Kodak."[2] Arbitrary marks are fully protected, so Plaintiffs have carried their burden to establish that all trademarks at issue are protectable.[3]

The Court now turns to whether Plaintiffs have adequately supported the likelihood of confusion as to all marks. In assessing the likelihood of consumer confusion, courts consider: (1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, 3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the plaintiff's marks, (6) any evidence of actual confusion, and (7) the defendant's intent to palm off its goods as those of the plaintiff's. *Promatek Indus.*, 300 F.3d at 812. "None of these factors are dispositive and the proper weight to be given to each will vary in each case." *Id.* Plaintiffs adduce facts supporting some, but not all, of these factors. Defendants also do not now dispute that their use of the Holbrook™ trademark and other branded products is likely to have caused confusion among consumers.

In support of the first two factors, Plaintiffs submit evidence that Rhyno's website uses the exact trademarks in dispute—including Holbrook™, TORX®, and TORX PLUS®—in addition to identical website content and images from Defendants' website. *See Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 871 (7th Cir. 2013) (noting that if the defendant's work bore the same name as the plaintiff's, "allegations of confusion ... could be omitted from the complaint"). As to the third factor, there is no dispute that the parties are direct competitors in the

---

[2] Plaintiffs allege facts supporting the acquisition of a secondary meaning to Holbrook: "Holbrook has used its unregistered Holbrook™ trademark to promote its specialty and custom-designed fasteners for many years, and the mark has come to be closely associated in the marketplace with Holbrook's high-quality, custom, and specialty products and quality service." Compl. ¶ 93. But the Court finds it unlikely that the term "Holbrook" is descriptive, and Plaintiffs provide no analysis on the point.

[3] Plaintiffs succeed on this element only because it is clear enough from the word itself and because Defendants explicitly decline to dispute the protectability of the Holbrook™ mark. Am. Resp. to Prelim. Inj. Mot. at 2. Plaintiffs' lack of analysis made it a close call.

fastener industry. *See Promatek Indus.*, 300 F.3d at 812 (considering direct competitive relationship between parties as evidence of confusion). As in *Promatek Indus.*, the strongest factor in Plaintiffs' favor is the fourth factor—the degree of care to be exercised by consumers. *Id.* Consumers' degree of care could lead to initial interest confusion, which "occurs when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated." *Id.* (citing *Dorr–Oliver, Inc. v. Fluid–Quip, Inc.,* 94 F.3d 376, 382 (7th Cir. 1996)). Plaintiffs have produced evidence establishing that, by embedding the Holbrook™, TORX®, and TORX PLUS® names and trademarks into Rhyno's website code and metatags, Defendants cause consumers to be diverted to Rhyno's website, whereby Defendants reap the goodwill Holbrook developed in its name and as a licensed supplier or TORX® and TORX PLUS® products. Kochan Decl. ¶¶ 24–25, 29–30. Therefore, based on the likelihood of initial consumer confusion, combined with the other factors discussed herein, Plaintiffs have adequately established that consumers are likely to be confused by Defendants' misuse of the marks at issue. *See, e.g.*, *Sullivan v. Bickler*, 360 F. Supp. 3d 778, 787 (N.D. Ill. 2019) (holding similar allegations to adequately plead confusion and overcome a motion to dismiss).

Plaintiffs also claim that Defendants violated Section 43(a) of the Lanham Act by falsely claiming that 6-LOBE PLUS is a federally registered trademark when it is not. Defendants do not deny that their website contained a false representation that an unregistered mark was federally registered. Am. Resp. to Prelim. Inj. Mot. at 2. Instead, Defendants again argue that Plaintiffs have not established irreparable harm or inadequate remedy at law. *Id.* at 2–3. Although Plaintiffs have put forth little support regarding their claim relating to the misidentification of 6-LOBE PLUS as

a federally registered trademark, there is just enough to support the requisite likelihood of success on the claim.

Defendants' sole argument against Plaintiffs' likelihood of success on the merits of their Lanham Act claim relies on an out-of-Circuit district court decision, *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F. Supp. 2d 545, 555 (E.D.N.Y. 2007). Am. Resp. to Prelim. Inn. Mot. at 3-4. In *FragranceNet.com*, the court held that the plaintiff failed to state a claim under the Lanham Act by alleging that the defendant-competitor used the plaintiff's trademark in an internet metatag and sponsored link. *Id.* at 547, 555. As Plaintiffs correctly point out, however, the Second Circuit precedent on which the *FragranceNet.com* court relied directly conflicts with Seventh Circuit precedent—specifically, *Promatek Indus.*, 300 F.3d at 814—and the decisions of other courts. *Id.* at 555. By showing that Defendants have embedded the Holbrook™, TORX®, and TORX-PLUS® trademarks in their website code, Plaintiffs have sufficiently established the likelihood of success on the merits of the Lanham Act claim under Seventh Circuit law. *See Promatek Indus.*, 30 F.3d at 814; *see also Flentye v. Kathrein*, 485 F. Supp. 2d 903, 917 (N.D. Ill. 2007) ("Use of a competitor's trademark in a web page's metatags with the purpose of diverting internet users from their intended website destination can constitute trademark infringement under the Lanham Act.") (quoting *Faegre & Benson, LLP v. Purdy,* 447 F.Supp.2d 1008, 1017 (D. Minn. 2006).

### 2.        Illinois Uniform Deceptive Trade Practice Act, 815 ILCS 510/2

The Court next turns to Plaintiffs' likelihood of success of the merits of their third count, alleging a violation of the UDTPA. To state a UDTPA cause of action, a plaintiff must establish the same elements required for a Lanham Act claim: "(1) that it has a protectable trademark; and (2) that Defendants' use of the trademark is likely to cause confusion among consumers." *Entm't*

*One UK Ltd.*, 384 F. Supp. 3d at 948; *see also Specht*, 660 F. Supp. 2d at 866 (N.D. Ill. 2009) ("Illinois courts resolve [U]DTPA claims arising out of an alleged infringement of a mark under the same standard as the Lanham Act."). Therefore, because Plaintiffs have established a likelihood of success on the merits of their Lanham Act claim, so too have they satisfied that preliminary injunction element for the UDTPA claim.

### C. Adequate Remedy at Law/Irreparable Harm

Beyond demonstrating a likelihood of success on the merits, Plaintiffs must also show that they have no adequate remedy at law and will suffer irreparable harm if the Court does not grant injunctive relief. These two requirements—irreparable harm and no adequate remedy at law—tend to merge. *See Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir. 1984).

The crux of Plaintiffs' and Defendants' respective arguments for and against the requested injunctive relief related to Rhyno's website is whether Plaintiffs have established irreparable harm, given that Rhyno's website was taken down on October 6, 2020. Plaintiffs insist that injunctive relief is necessary because it is likely that Defendants will continue to engage in similar misrepresentations and deceptive practices with the next version of their website. Plaintiffs contend this is especially likely given that Defendants' second website removed "the most obvious misrepresentations," but still contained misrepresentations in the metadata and website code, which caused the same harmful consumer confusion and continued to divert Plaintiffs' customers to Rhyno's website. Mem. in Support of Prelim. Inj. Mot. at 5–6. Conversely, Defendants claim that because the website is down, "there is no ongoing violation and there will be no future violation that will cause Plaintiffs irreparable injury with no adequate remedy of law." Am. Resp. to Prelim. Inj. Mot. at 2. Plaintiffs' argument wins the day: even though Rhyno's website is not

currently live, Plaintiffs have carried their burden of establishing that they will suffer irreparable harm if the Court does not issue an injunction enjoining Defendants' misstatements.

Traditionally, the Seventh Circuit applied a presumption that when a plaintiff sufficiently establishes trademark infringement, the plaintiff will suffer irreparable harm and have no adequate remedy at law absent an injunction. *See, e.g.*, *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). This presumption was called into doubt when the Supreme Court rejected the same presumption in patent infringement cases, *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), and the Seventh Circuit subsequently did away with it in copyright cases, *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012). The Seventh Circuit has neither reaffirmed nor overruled prior trademark cases applying the presumption, although post-*eBay* it noted that "irreparable harm is especially likely in a trademark case." *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013). Courts in this District are divided on the issue. *Compare SFG, Inc. v. Musk*, 2019 WL 5085716, at *14 (N.D. Ill. Oct. 10, 2019) (applying the presumption); *Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, 2015 WL 3637740, at *23 n.20 (N.D. Ill. June 11, 2015) (collecting cases that apply the presumption) *with Illinois Tamale Co. v. El-Greg, Inc.*, 2019 WL 4395139, at *19 (N.D. Ill. Sept. 13, 2019) (declining to apply the presumption); *Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, 2015 WL 3633987, at *11 (N.D. Ill. June 10, 2015) (same). The Court need not weigh in on the debate, as the specific facts of this case support that Plaintiffs are likely to suffer irreparable harm without an adequate remedy at law from an ongoing Lanham Act violation.[4]

---

[4] Plaintiffs argue that they are not required to demonstrate irreparable harm or lack of an adequate remedy at law in order to obtain an injunction under the UDTPA, because it expressly authorizes injunctive relief. Reply at 7 (citing 815 ILCS 510/3). True, under Illinois law, "where a statute expressly authorizes injunctive relief, … the general rules of equity requiring a showing of lack of an adequate remedy at law and irreparable injury need not be shown." *People v. Fiorini*, 143 Ill. 2d 318, 345–46 (1991). Courts apply federal law when determining whether to grant or deny injunctive relief, however, and federal law requires

Irreparable harm is harm that is "not fully compensable or avoidable by the issuance of a final judgment (whether a damages judgment or a permanent injunction, or both) in the plaintiff's favor." *Kraft Food Brands LLC*, 735 F.3d at 740. Courts consider consumer confusion and the loss of goodwill to be irreparable because of "the difficulty of quantifying the likely effect on a brand." *Id.* at 741; *Promatek Indus.*, 300 F.3d at 813. Defendants contend that Plaintiffs' reliance upon *Promatek Indus.* in support of injunctive relief is "highly questionably" because the decision was based upon the presumption of irreparable harm discussed above. Am. Resp. to Prelim. Inj. Mot. at 2–3. The Court agrees with Plaintiffs, however, that although the court recognized the existence of the presumption of irreparable harm in *Promatek Indus.*, it also independently examined the facts of the case to determine whether Plaintiffs would suffer irreparable harm absent an injunction. *Promatek Indus.*, 300 F.3d at 813.

As in *Promatek Indus.*, here Plaintiffs have established that Defendants' misappropriation of the Holbrook™, TORX®, and TORX PLUS® names and trademarks in Rhyno's website code caused at least "initial interest confusion" in that customers diverted to the website would have been led to believe that Rhyno was affiliated with Holbrook and was a licensed supplier of TORX-PLUS® and TORX-PLUS® fasteners. Kochan Decl. ¶¶ 23–25, 29–30. Plaintiffs also produced evidence that Defendants made other false and deceptive statements that similarly caused consumer confusion and damaged Plaintiffs' goodwill: Rhyno's website falsely claimed that 6-LOBE Plus was a federally registered trademark when it was not, and the original Rhyno website falsely claimed that it was a licensed supplier of at least ten branded product lines that are licensed to and sold by Holbrook. *Id.* ¶¶ 20–31. Contrary to Defendants' claim, the harm alleged by Plaintiffs is not fully compensable by money damages because, as discussed above, actual damages

the Court to apply the four-factor test to determine whether it should grant a preliminary injunction. *See LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 790 F. Supp. 2d 708, 730 (N.D. Ill. 2011).

based on consumer confusion and the loss of consumer goodwill are difficult to quantify. *See, e.g.*, *Kraft Foods Grp. Brands LLC*, 735 F.3d at 741.

Defendants' primary argument is that there is no ongoing violation and will be no future violation that will cause Plaintiffs irreparable injury because Defendants took down the Rhyno website on October 6, 2020, and Defendants "do not want to use the unregistered Holbrook™ name or mark," "do not want to represent that Rhyno is a licensed supplier of branded products for which it is not actually licensed, … or falsely represent that marks are federally registered." Am. Resp. to Prelim. Inj. Mot. at 2. But, as Plaintiffs correctly argue, irreparable harm "need not be occurring" to justify injunctive relief. *Michigan v. U.S. Army Corps of Eng'rs.*, 667 F.3d 765, 788 (7th Cir. 2011). The defendant in *Promatek Indus.* similarly took down its offending website embedding the plaintiff's trademark upon learning of the plaintiff's lawsuit; nonetheless, the Seventh Circuit upheld a preliminary injunction preventing the defendant from using the plaintiff's mark in its website and requiring defendant to place a notice on its website disclaiming any affiliation between the parties. *Promatek Indus.*, 300 F.3d at 811.

Moreover, Defendants' course of conduct from the launch of its initial website on August 20, 2020 until the filing of Plaintiffs' complaint on October 6, 2020, raises serious questions about Defendants' "ability to police its own website." *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, 2016 WL 6092636, at *7 (N.D. Ill. Oct. 19, 2016). Rhyno's website went online and was available to the public as of August 20, 2020 but was taken down four days later in response to a complaint from the owner of the TORX® and TORX PLUS® marks about Rhyno's false claims to be a supplier and licensee of those marks. Rhyno's website went live against on September 23, 2020. The second version lacked the obvious misrepresentations but had built in metadata in its code that included the Holbrook™, TORX®, and TORX-PLUS® trademarks. The second website survived

for almost a week with no complaints, until Plaintiffs' lawyer sent a cease and desist letter to Defendants, demanding that, among other things, they remove the Holbrook™, TORX®, and TORX-PLUS® trademarks from Rhyno's website and code and remove the content and images Rhyno had plagiarized from Holbrook's website. Kochan Decl., Exh. 2. Defendants responded through their attorney on October 2, 2020, that they had fully complied with those requests. Kochan Decl., Exh. 3. Despite the representations made in Defendants' counsel's letter of October 2, 2020, the three offending trademarks were still embedded in the Rhyno website code and could confuse consumers searching online for TORX® suppliers. Kochan Decl. ¶ 34, Exh. 4. Once Plaintiffs filed their lawsuit on October 6, 2020, Defendants took down Rhyno's website the same day.

Defendants attribute the violations to the inexperience of the non-professional designer who built the website, and state that they are rebuilding the website from scratch using a professional. Resp. to Prelim. Inj. Mot. at 7, Exh. C, D. Kuhns Decl. ¶ 6; S. Kuhns Decl. ¶ 6. While that may be true, and Defendants have acted quickly to remove offending content when put on notice, the repeat violations indicate that Defendants' current policies and practices are insufficient to reduce the potential harm to Plaintiffs before the final resolution of this case. *Luxottica Grp. S.p.A.*, 2016 WL 6092636, at *7 (issuance of a preliminary injunction warranted where defendant misused plaintiff's trademark again after agreeing to stop, despite defendant's claim that a third party caused the misuse).

Plaintiffs have adequately established that they will suffer irreparable harm with no adequate remedy at law absent an order: (1) enjoining Defendants from making further false or misleading statements on Rhyno's website, (2) enjoining Defendants from using the Holbrook™, TORX®, and TORX-PLUS® names or marks on Rhyno's website and in its source code or

metadata, and (3) requiring Defendants to contact appropriate web browsers to request that they remove offending links previously established by Defendants.

**D.      Balancing the Harms and Public Interest**

Finally, the Court must balance the harms and consider the effect the injunction will have on the public. *Promatek Indus.*, 300 F.3d at 813. As in *Promatek Indus.*, the harm to Plaintiffs as a result of denying an injunction prohibiting Defendants from using misleading language or misusing trademarks in their metadata, as well as contacting web browsers to remove offending links, outweighs the harm to Defendants in granting it. Without the injunction, Defendants could continue to confuse consumers about their affiliation with Holbrook and the TORX® and TORX-PLUS® trademarked products, thereby acquiring goodwill that belongs to Plaintiffs. *Id.* This injunctive relief will not harm Defendants, who advance no argument that it does, as it merely prevents them from engaging in further unlawful behavior. "[E]njoining the Defendant[s] from violating the law cannot, by its very nature, cause the Defendant[s] any harm." *Volkswagen AG v. iman365-usa*, 2020 WL 977969, at *8 (N.D. Ill. Feb. 28, 2020). What's more, Defendants have already taken down their website and claim that they have no interest in re-committing their past violations. *Id.* (the balance of harms tips strongly in favor of plaintiffs when the defendant has already stopped the infringing behavior).

The public interest would similarly be served because the injunction prevents consumer confusion in the marketplace. *Promatek Indus.*, 300 F.3d at 813–14; *see also Luxottica Grp. S.p.A.*, 2016 WL 6092636, at *9 ("Enforcement of the trademark laws prevents consumer confusion and serves the public's interest in not being deceived… .") (internal citations and quotations omitted).

The balance of harms shifts the other way, however, when it comes to Plaintiffs' request that Defendants take remedial action by "posting notices on any Rhyno website correcting

Defendants' false, deceptive, and misleading statements and actions." Prelim. Inj. Mot. at 7–8. The offending Rhyno websites were only online and accessible to the public for a total of sixteen days (five days for the first version and eleven for the second). Defendants produced evidence that Rhyno did not receive any customer orders as a result of the website. D. Kuhns Decl. ¶ 9; S. Kuhns Decl. ¶ 9. Plaintiffs have not produced any evidence that they lost significant visitors to Holbrook's website during the periods when Rhyno's website was live. Therefore, requiring Defendants to take affirmative remedial action will produce little benefit to Plaintiffs. Although the Seventh Circuit affirmed the district court's award of substantially similar relief in *Promatek Indus.*, it did so while applying an abuse of discretion standard; moreover, neither the Seventh Circuit nor the District Court specified how long the offending metadata misdirecting consumers to defendant's website was live. 300 F.3d at 811. This Court therefore employs its own discretion to deny Plaintiffs' requested relief. It is unlikely that such remedial actions would serve the public interest, as there is no evidence before the Court regarding how many, if any, consumers visited Rhyno's website during the sixteen days it was live, so they would neither need nor understand the disclaimer language.

## II.    False Patent Marking, 35 U.S.C. § 292

Plaintiffs have alleged a claim only against Rhyno for false patent marking. To state a claim, a plaintiff must allege that: "1) the defendant marked an unpatented article with patent language; 2) the defendant intended to deceive the public; and 3) the plaintiff suffered a competitive injury as a result." *Norix Grp., Inc. v. Corr. Techs., Inc.*, 2018 WL 3729324, at *2 (N.D. Ill. Aug. 6, 2018). Because the second element sounds in fraud, a plaintiff must plead it with particularity under Rule 9(b). *Id.*; *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir. 2011). Plaintiffs have produced evidence supporting element one: Rhyno made false statements on its website advertising that Rhyno's unpatented "'AUTOSERT® feature' is a 'patented feature'

21

of Rhyno's unpatented 6-LOBE PLUS drive and a '6-LOBE PLUS® Drive exclusive.'" Kochan Decl. ¶¶ 27–28. Defendants do not contest that Rhyno's website contained misstatements about patents, although Defendants characterized the misstatements as unintentional. Am. Resp. to Prelim. Inj. Mot. at 2.

To carry their burden as to the second element, plaintiffs must establish that defendants made a misrepresentation and that they knew the misrepresentation was false. *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005); *Norix Grp.*, 2018 WL 3729324, at *3 (inferring deceptive intent where plaintiff alleged that defendant knew about company's false marking and oversaw company's day-to-day activities, including applying for patents and marketing materials). Here, Plaintiffs merely state that Rhyno does not own any patent or patents rights in the AUTOSERT® feature but nonetheless claim that it is a "patented feature" of a Rhyno product. Plaintiffs do not provide any additional "objective indication [from which the Court can] reasonably infer" that defendants knew of the falsity of the marking. *BP Lubricants*, 637 F.3d at 1311. Although it is possible that Plaintiffs could present additional evidence of Defendants' deceptive intent, the "possibility of success is not enough." *Illinois Republican Party*, 973 F.3d at 762. Thus, Plaintiffs' have not produce sufficient evidence to satisfy element two of their false marking claim.

Plaintiffs even more clearly fail to adequately establish evidence supporting the third element: "[p]leading a competitive injury requires alleging an actual injury, not merely a hypothetical or potential future injury." *Norix Grp.*, 2018 WL 3729324, at *4. Here, Plaintiffs argue that they have satisfied that element because Holbrook "is a licensed supplier of TORX PLUS® drive systems with the AUTOSERT® feature and stands to lose customers and many millions of dollars of sales from Rhyno's false advertising and patent claims." Mem. in Support of

Prelim. Inj. Mot. at 6–7. But Plaintiffs have not alleged or provided evidence of any particular instances of competitive injuries or "otherwise establish[ed] a causal connection between, for example, lost sales and [Defendants'] false marking. *Norix Grp.*, 2018 WL 3729324, at *5 (collecting cases). Plaintiffs' speculative allegations of competitive injury fall short of establishing sufficient evidence to support the third element of their false patent marking claim. As such, the entire claim fails.

Because Plaintiffs fail to demonstrate the likelihood of success on the merits of their false patent marking claim, the Court need not conduct further analysis as to the remaining preliminary injunction factors or the balancing of harms. *See GEFT Outdoors*, 922 F.3d at 367; *see also Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018); *Haney v. Winnebago Cty. Bd.*, 2020 WL 1288881, at *7 (N.D. Ill. Mar. 18, 2020). Plaintiffs have not shown they are entitled to injunctive relief with regard to Count II.

### III. Tortious Interference with Prospective Economic Advantage

In Count VII, Plaintiffs assert an Illinois common-law claim for "tortious interference with prospective economic advantage" against all Defendants. In analyzing whether Plaintiffs are entitled to injunctive relief with respect to Count VII, the Court first considers the Plaintiffs' likelihood of success on the merits. In Illinois, the elements of a tortious interference with prospective economic advantage claim consist of the following: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damages to the plaintiff resulting from the defendant's interference." *Foster v. Principal Life Ins. Co.,* 806 F.3d 967, 971 (7th Cir. 2015) (*citing Voyles v. Sandia Mortgage Co.,* 751 N.E.2d 1126, 1133 (Ill. 2001)).

In their Preliminary Injunction Motion and Memorandum in Support, Plaintiffs contend that they are likely to prevail on the merits of their tortious interference claim; yet, the Motion and Memorandum are devoid of any discussion of this cause of action's aforementioned elements. Plaintiffs summarily address the elements for the first time in their Reply, including string cites to the Complaint without further explanation and conclude that the elements have been met. *See* Reply at 11. Notwithstanding Plaintiffs' failure to address each element, the Court has independently reviewed and considered the evidence produced by Plaintiffs supporting the allegations asserted in Count VII of the Complaint.

### A.     Reasonable Expectancy of Business Relationship

With regard to the claim's first element, Plaintiffs allege that they "had and have a reasonable business expectancy and ongoing relationship with their customers, employees, licensors, and manufacturer representatives." Compl. ¶ 138. And, as part of his Declaration, submitted in support of Plaintiffs' Preliminary Injunction Motion, Joe Kochan, Vice President and General Manager of EFG and Holbrook No. 2, states that Defendants' conduct has caused or is likely to cause the loss of employees and the loss of customers, sales, and market share. Kochan Decl. ¶ 52. As Defendants do not challenge Plaintiffs' assertion that they have a reasonable expectancy of entering business relationships with customers, employees, etc., for the purposes of this Motion, the Court finds that this element is not at issue, and Plaintiffs have satisfied their burden here.

### B.     Defendants' Knowledge

Turning to the second element, Plaintiffs allege that "Defendants have had knowledge of Plaintiffs' business expectancies and relationships." Compl. ¶ 139. Plaintiffs produced evidence that Defendants have contacted and attempted to recruit "numerous Holbrook employees,

including key employees with technical skills and/or inside knowledge of Holbrook's operations [...]"; contacted and solicited "Holbrook's customers, including some of Holbrook's largest customers, [...] to encourage them to switch their business to Rhyno"; and contacted and solicited "Holbrook's suppliers, licensors, and manufacturer representatives."  Kochan Decl. ¶¶ 38, 44, 48. Again, as Defendants do not challenge Plaintiffs' assertion that Defendants had knowledge of Plaintiffs' business expectancies and relationships, for the purposes of this Motion, the Court finds that Plaintiffs have also satisfied their burden as to this element.

### C.       Intentional and Unjustified Interference

The third element—purposeful and unjustified interference that causes a breach or termination of said business expectancies—is where Plaintiffs's Motion fails. As part of this element, Plaintiffs must plead and prove "purposeful interference," which means that the Defendants have committed some impropriety in interfering with Plaintiffs' business expectancies. *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 371 (Ill. 1998). A plaintiff will generally not have a cause of action for interference with a prospective business relationship against a bona fide competitor, as is the parties' dynamic here, unless the circumstances indicate unfair competition or the use of wrongful means. *A–Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1404–05 (7th Cir. 1992); *see also XPO Logistics, Inc., et al. v. Gallatin*, *et al.*, 2013 WL 3835358, at *6 (N.D. Ill. July 24, 2013) (while a corporation may generally compete for the at-will employees of a rival based on the competitor's privilege, the privilege "is not available to a party that has behaved unfairly or used wrongful means"); *Miller v. Lockport Realty Group, Inc.*, 878 N.E.2d 171, 177 (Ill. App. Ct. 2007) ("When, as in this case, the existence of a privilege [of competition] in favor of the defendant is apparent on the face of a claim for tortious interference

... it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious.") (internal citations omitted).

To that end, Plaintiffs allege that "Defendants wrongfully and intentionally, through improper means, interfered with Plaintiffs' expectancies by, among other things, using Plaintiffs' confidential information to contact and solicit Plaintiffs' customers and employees and raiding and hiring away Holbrook's employees." Compl. ¶ 140. Plaintiffs further allege that "Defendants also wrongfully and intentionally, through improper means, interfered with Plaintiffs' expectancies by, among other things, engaging in the acts of unfair competition, and unlawful and deceptive practices [...] designed to unfairly compete with Plaintiffs and interfere with Plaintiffs' relationships and future business with its customers, licensors, and manufacturer's representatives." *Id*. ¶ 141. In his Declaration, Joe Kochan submits that Defendants have "improperly used [...] confidential information to contact and attempt to recruit numerous Holbrook employees" and "improperly used [confidential] information to contact and solicit Holbrook's customers [...] to encourage them to switch their business to Rhyno." Kochan Decl. ¶¶ 38, 44. Putting aside the legal conclusions ("wrongfully and intentionally," "through improper means," "unfair competition," and "unlawful and deceptive"), it is clear (and made clearer during the TRO hearing) that Plaintiffs are relying on Defendants' "wrongful" use of "confidential information" as the factual basis of Defendants' impropriety. Plaintiffs assert that Defendants have engaged in "a concerted effort" to use the Kuhns brothers' knowledge of Holbrook's confidential employee information (including, employee contact information and information regarding employees' positions, technical skills, and wages) to raid Holbrook's employees and have similarly used confidential customer and supplier information (including, names and identities of key contact persons, customer preferences, and purchasing information) to contact and solicit

Plaintiffs' customers, suppliers, licensors, and manufacturer representatives away from Plaintiffs. Compl. ¶¶ 81–84. As Plaintiffs argue, the wrongdoing or impropriety stems from (1) Defendants Derek and Shawn Kuhns' violations of the Employee Handbook's confidentiality provisions and (2) their "common law duty" not to use or disclose that information to unfairly compete with Plaintiffs or to raid Plaintiffs' employees. Reply at 10.

In their Motion and Memorandum in Support, Plaintiffs cite to two cases in support of these assertions—*XPO Logistics*, 2013 WL 3835358, at *1 and *PepsiCo, Inc. v. Redmond,* 1995 U.S. Dist. LEXIS 19437, at *1 (N.D. Ill. 1995).[5] Defendants argue that both cases are factually distinguishable. The Court agrees.

In *XPO*, much like in this case, the plaintiffs filed a multi-count complaint against a former employee and her current employer, asserting breach of contract, tortious interference with business relationships between XPO/Express-1 and its employees, and tortious interference with business relationships between XPO/Express-1 and its customers, among other claims. *XPO Logistics*, 2013 WL 3835358, at *6 (internal citations omitted).

Turning first to XPO's *employee* business relationships count, the XPO plaintiffs alleged that the defendants took wrongful and unlawful actions to engage in a concerted raid of plaintiffs' employees. Specifically, and distinguishable from the facts here, the defendant-company encouraged employees to leave plaintiffs' employ and not to honor the two-week notice policy; the defendant-former employee kept her company-issued laptop for several weeks post-resignation and used confidential, proprietary, and highly sensitive business information to effectuate the employee raid; and, critical to their claim, the defendant-former employee had signed a non-competition, non-solicitation, and confidentiality contract that survived the termination of her

---

[5] Notably, Plaintiffs cite to the *PepsiCo* district court opinion and not the Seventh Circuit opinion, which upheld the lower court's granting of the preliminary injunction. *See Pepsico, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995).

employment. *Id*. Based on the plaintiffs' assertions of specific actions taken by defendants in contravention of an employment agreement, plaintiffs' tortious interference claim survived a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Id*.; *see also Dames & Moore v. Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 826 (N.D. Ill. Aug. 6, 1998) (finding that the plaintiff sufficiently alleged tortious interference based on allegations of defendants' misappropriation of confidential information in clear contravention with the employee-defendant's non-competition agreement).

Here, Plaintiffs point to no evidence that Rhyno or the Kuhns brothers actually took company property (e.g., company documents, a company-issued laptop, or a flash drive of data). And, Plaintiffs have not shown (nor can they) that the Kuhns brothers were subject to non-competition, non-solicitation, or confidentiality agreements. Instead, Plaintiffs argue that the Kuhns brothers are in violation of the Employee Handbook, which contains confidentiality provisions. *See* Mem. in Support of Prelim. Inj. Mot. at 13; Kochan Decl. ¶¶ 9–10. Plaintiffs contend that the brothers "accepted and agreed to the terms" of the Handbook as part of their former employment with Holbrook. *See* Compl. ¶ 22; Kochan Decl. ¶ 9. In Response, Defendants argue, Resp. to Prelim. Inj. Mot. at 10–11; Am. Resp. to Prelim. Inj. Mot. at 4, that the Employee Handbook is not a contract on its face, as it includes a specific provision disclaiming the existence of a contract, which Plaintiffs incidentally do not dispute, Kochan Suppl. Decl. ¶ 5. Defendants also argue that the Employee Handbook is not a contract under Illinois law. Resp. to Prelim. Inj. Mot. at 10–11; Am. Resp. to Prelim. Inj. Mot. at 4. The Court agrees with Defendants on both points. *See Ivory v. Specialized Assistance Services,* 850 N.E.2d 230, 232–33 (Ill. App. Ct. 2006) (noting that where an employee handbook contains a disclaimer indicating that the handbook promises nothing and does not act as a contract, no enforceable contractual rights will be conferred

28

on the employee based on that handbook). The facts here are distinguishable from *XPO* on an employer/employee business relationship theory.

Importantly (and not discussed by Plaintiffs), *XPO*'s holding relating to the tortious interference of *customer* business relationships count cuts against Plaintiffs' arguments. In *XPO*, the court found that the plaintiffs would be unable to obtain relief for any inducement of the disclosure of confidential information by employees not bound by post-employment restrictions after they left their former employment. *XPO Logistics*, 2013 WL 3835358, at *7–8. The same would be true here. Plaintiffs have not shown that the Kuhns brothers are bound by any post-employment restrictions, and as such, *XPO* is also distinguishable on a company/customer business relationship theory.

Plaintiffs also rely on the district court opinion in *PepsiCo* to support their assertion that Defendants improperly interfered with their business relationships, because the Kuhns brothers breached their "common law duty" to protect a former employer's confidential information. Mem. in Support of Prelim. Inj. Mot. at 13. *PepsiCo* is not only factually distinguishable, but the Seventh Circuit affirming opinion does not stand for Plaintiffs' suggested proposition. *PepsiCo*, 54 F.3d at 1271. In *PepsiCo*, Pepsi sought a preliminary injunction against its former General Manager to prevent him from disclosing trade secrets and confidential information relating to beverage pricing, marketing, and distribution to his new employer, Quaker Oats, a competitor. *Id.* at 1263–64. The district court granted the preliminary injunction. *Id.* at 1267. The Seventh Circuit agreed and upheld the injunction. *Id.* at 1271. In upholding the injunction, the Seventh Circuit found that the General Manager, who moved from a high-level position at Pepsi to a high-level position at Quaker, would inevitably rely on the trade secrets he learned at Pepsi in his new role, and this inevitability would necessarily force him to breach his confidentiality agreement with Pepsi. *Id.* at

1271 ("Because Redmond's position at Quaker would initially cause him to disclose trade secrets, it would necessarily force him to breach his agreement not to disclose confidential information acquired while employed in PCNA."). The *PepsiCo* injunction was not granted based on a breached "common law duty," as Plaintiff suggests; rather the injunction was based on a likely misappropriation of trade secrets and a likely breach of an employment confidentiality contract. This is not a trade secrets case, and again, Plaintiffs have not proffered evidence showing that Kuhns brothers were bound by any confidentiality agreement.

Plaintiffs' cited cases, which rest on physical taking of company information, inducement of employer policy violations, and breaches of employment agreements, are distinguishable. Because Plaintiffs have not submitted any evidence of improper or unlawful conduct in Defendants' interference with their business relationships, the key element of a tortious interference with a prospective economic advantage claim, it follows that Plaintiffs have not shown the requisite likelihood of success on the merits of this cause of action.

Further, as discussed above in Section II, *supra*, because Plaintiffs have not shown the likelihood of success on the merits of this cause of action, no further analysis as to the remaining preliminary injunction factors or the balancing of harms is needed. *See, e.g.*, *GEFT Outdoors*, 922 F.3d at 367. Plaintiffs have failed to demonstrate that injunctive relief is warranted with regard to Count VII.

## IV.     Count VIII: Unfair Competition

In Count VIII, Plaintiffs assert an Illinois common-law claim for unfair competition against all defendants. In analyzing whether Plaintiffs are entitled to injunctive relief with respect to Count VIII, the Court first considers the Plaintiffs' likelihood of success on the merits of this cause of action.

### A.     Likelihood of Success on the Merits

Under Illinois law, the "principal form of the tort of unfair competition 'falls under the rubric of tortious interference with prospective economic advantage.'" *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998) (quoting *Zenith Electronics Corp. v. Exzec, Inc.,* 1997 WL 223067, at *6 (N.D. Ill. March 27, 1997)). In connection with a claim of unfair competition, Illinois courts require a plaintiff to plead and prove every element of a claim for tortious interference with prospective economic advantage. *Zenith*, 1997 WL 223067, at *8 (internal citations omitted). As with a claim for tortious interference of a prospective economic advantage, the defendant can raise and is entitled to the protection of the privilege of competition provided that defendant has not employed wrongful means. *Id*.

Just as Plaintiffs have failed to demonstrate a likelihood of success on a tortious interference claim, Plaintiffs fail to demonstrate a likelihood of success on an unfair competition claim for the same reason—Plaintiffs have not shown the requisite wrongful means. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. at 681 ("MPI's common law unfair competition claim cannot survive summary judgment for the same reasons that its tortious interference claims fail— MPI cannot as a matter of law demonstrate that BBC acted in bad faith.").

Again, because Plaintiffs fail to demonstrate the likelihood of success on the merits of an unfair competition cause of action, the Court need not conduct further analysis as to the remaining preliminary injunction factors or the balancing of harms. *See GEFT Outdoors*, 922 F.3d at 367. Plaintiffs have not shown they are entitled to injunctive relief with regard to Count VIII.

### Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion for a preliminary injunction. Accordingly, the Court orders that:

1. Defendants Rhyno, Derek Kuhns, and Shawn Kuhns, and their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be preliminary enjoined in the United States from:

    a. making any further false or misleading statements on Rhyno's website or otherwise stating or implying that Rhyno is a licensed supplier of any branded products for which Rhyno is not actually licensed, including without limitation such claims with respect to TORX® and TORX-PLUS® branded products; and

    b. using in any manner, on or in Rhyno's website, source code for its website, or meta data or metatags or otherwise, the unregistered Holbrook™ name or mark, the TORX® and TORX-PLUS® names or marks, or any confusingly similar names, words, or marks.

2. Within fourteen (14) days of entry of this Order, Defendants must contact appropriate web browsers to request that they remove offending links previously established by Defendants. Within twenty-eight (28) days of entry of this Order, Defendants shall serve upon Plaintiffs a written report providing the steps taken by Defendants to contact appropriate web browsers.

3. Defendants did not request that Plaintiffs post a bond should Plaintiffs be successful on their Preliminary Injunction Motion. The Court nevertheless finds that based on the relief granted in this Order, issuance of a bond is not appropriate.

Dated: October 29, 2020

_____
Judge Franklin U. Valderrama